# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| Willie B. Brown,<br><br>Petitioner,<br><br>v.<br><br>William Bolin, Warden, Minnesota Correctional Facility - Stillwater,<br><br>Respondent. | Case No. 24-cv-398 (SRN/SGE)<br><br>**MEMORANDUM OPINION AND ORDER** |

Willie B. Brown, OID # 233827, MCF-Stillwater, 970 Picket St. N., Bayport, MN 55003, Pro Se Petitioner.

Adam E. Petras, Hennepin County Attorney's Office, A-1500 Government Center, 300 S. 6th St., Minneapolis, MN 55487; Edwin William Stockmeyer, III, and Thomas R. Ragatz, Minnesota Attorney General's Office, 445 Minnesota St., Ste. 1800, St. Paul, MN 55101, for Respondent.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Petitioner Willie B. Brown's Objections [Doc. No. 18] to United States Magistrate Judge Shannon G. Elkins' January 3, 2025 Report and Recommendation [Doc. No. 17] ("R&R"), and Mr. Brown's Request for an Evidentiary Hearing [Doc. No. 20]. The magistrate judge recommended that Petitioner's 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] ("Petition") be denied, the action be dismissed with prejudice, and a Certificate of

Appealability be denied.  (R&R at 18.)  For the reasons set forth below, Petitioner's objections are overruled, the Court adopts the R&R, as modified, denies a Certificate of Appealability, and dismisses this matter with prejudice.

## II.   BACKGROUND

The factual and procedural background of this matter is well documented in the R&R and is incorporated herein by reference.  This Court will recite background facts only to the extent necessary to rule on Petitioner's objections.

Mr. Brown seeks habeas relief following his January 2022[1] conviction for second-degree murder in Hennepin County District Court.  (Resp't App. ("R.A.") [Doc. No. 12-2] at 1423, 1536–37.)

### A.  First Trial and Appeal

In 2018, a Hennepin County jury convicted Mr. Brown of the second-degree murder of victim D.H., as well as for a drive-by shooting and second-degree assault that occurred on the same day as D.H.'s murder.  *See State v. Brown*, Nos. A19-0409, A19-1493, 2020 WL 4932785, at * 1–2, 9 (Minn. Ct. App. Aug. 24, 2020) ("*Brown I*").  Mr. Brown appealed his conviction.  The Minnesota Court of Appeals found the charges were erroneously joined for trial.  *Id.*  at *6–7 ("Because the offenses were committed at different times, at different locations, and for different purposes, and because joining the offenses unfairly prejudiced Brown, we reverse the district court's decision and remand for separate proceedings on each

---

[1]     The R&R refers to Mr. Brown's retrial for second-degree murder occurring in July 2021. (R&R at 2.)  However, the record indicates the trial was held between January 11, 2022 and January 28, 2022.  (R.A. at 368–1543.)

of the two court file numbers."). In reaching its decision on whether joinder was prejudicial to Mr. Brown, the Minnesota Court of Appeals considered the admissibility of "hypothetical *Spreigl* evidence," i.e., the admissibility of drive-by-shooting/second-degree assault evidence in the murder trial. *Id.* at *10 (citing state court authority that "joinder is not prejudicial if evidence of each offense would have been admissible *Spreigl* evidence in the trial of the other.") (citation omitted). It found that a district court would "commit error if it admitted the evidence of the drive-by-shooting/second-degree assault in the trial for D.H.'s murder." *Id.* at *11. In deciding whether to remand for retrial or to remand for entry of judgment of acquittal, the Minnesota Court of Appeals found that the state had presented sufficient evidence of Mr. Brown's guilt to warrant retrial. *Id.* at *16.

**B. Second Trials and Appeal**

On remand, Mr. Brown first proceeded to trial on the drive-by-shooting and second-degree assault charges. *See State v. Brown*, No. A22-0621, 2023 WL 3806696, at *1 (Minn. Ct. App. June 5, 2023) ("*Brown II*"). Following Mr. Brown's conviction on both charges, prosecutors then moved to admit *Spreigl*[2] evidence related to those convictions in Mr. Brown's separate retrial for second-degree murder. *Id.* Mr. Brown objected, pointing to *Brown I*, and arguing that such evidence was inadmissible under the law-of-the-case doctrine.

---

[2]    In Minnesota state courts, evidence of a defendant's other crimes or prior bad acts is referred to as "*Spreigl* evidence" pursuant to *State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965). Such evidence may be admissible under Minn. R. Evid. 404(b) as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

*Id.* The district court granted the state's motion in part and permitted the prosecution to offer limited evidence of the drive-by shooting in the remanded murder trial. *Id.*

Also, before trial, Mr. Brown moved for dismissal, arguing that the state had engaged in an illegal search of his body by obtaining a blood draw. *Id.* at *7. While the trial court suppressed the evidence obtained from the blood draw, it found that the search did not warrant dismissal of the murder charge. *Id.*

At trial, Mr. Brown represented himself and testified on his own behalf, denying that he had killed D.H. *Id.* at 1–2. The Minnesota Court of Appeals summarized the evidence as follows:

> Around 4:00 a.m. on April 26, 2018, T.F. woke up when she heard an argument outside her Minneapolis home. T.F. stepped outside and saw her cousin, D.H., get into D.H.'s car, a black Chevrolet Impala. D.H. was driving and Brown was in the passenger's seat when the car drove away. T.F. knew D.H. and Brown; they visited her home almost every day.
>
> At 5:06 a.m., police responded to a ShotSpotter2 alert about one mile from T.F.'s home. The responding officer discovered D.H.'s body with three gunshot wounds; D.H. was pronounced dead at the hospital. An autopsy revealed D.H.'s death resulted from a gunshot wound to his neck, where a bullet struck his carotid artery. Law enforcement recovered three casings in proximity to where the officer found D.H.'s body.
>
> Also[,] during the early morning of April 26, 2018, T.F. dropped a family member off, returned home at about 5:20 a.m., and saw Brown with an "extended clip hanging out" of his pocket on the porch of her home. T.F. left and returned home again at 6:00 a.m., when she saw Brown near D.H.'s black Impala.
>
> Around 6:50 a.m., a car-wash surveillance camera recorded Brown in D.H.'s black Impala. Brown used a "hose sprayer" to wash D.H.'s black Impala. The video recording, which was received into evidence and played for the jury, showed Brown with a jacket and carrying black shoes and, later, without a jacket. The shoes and jacket in the car-wash recording were later found at the car wash and determined to have traces of D.H.'s blood.

4

At about 7:00 a.m., T.F. saw Brown drive D.H.'s car on the street outside her home; Brown was holding a gun. T.F. testified that Brown fired the gun. T.F. dialed 911, as she had earlier that morning to report seeing Brown with an extended clip. Police responded, and, while officers were present, Brown approached T.F.'s home on foot from the backyard. Police arrested Brown. Two witnesses reported seeing Brown arrive near T.F.'s home in a black Impala, park the car, and exit it. When police followed Brown's path from the parked Impala to T.F.'s home, officers found two guns, including a .40 caliber Smith and Wesson.

The jury received forensic evidence of several items. First, forensic analysis matched the bullet that killed D.H. with a bullet casing found outside T.F.'s home; both were fired by the Smith and Wesson gun found near T.F.'s home. Second, Brown's thumbprint was found on the extended clip of the Smith and Wesson gun. Third, forensic testing of swabs taken from blood at the car wash matched D.H.'s blood, which was admitted as evidence.

*Id*. at *1–2.

Of this evidence, the proffered *Spreigl* evidence included T.F.'s testimony that she had seen Mr. Brown drive D.H.'s black Impala and discharge a firearm outside her home about two hours after D.H.'s body was found, and forensic evidence showing that bullet casings found outside T.F.'s home matched the murder weapon and were fired from the same gun that contained Mr. Brown's thumbprint. *Id*. at *4. The district court held this evidence was admissible under *Spreigl*, finding it relevant to issues of identity and opportunity, as it "tended to prove that Brown possessed the murder weapon shortly after the murder and fired the murder weapon." *Id*. (internal quotations omitted). To reduce the risk of prejudice, the district court limited the testimony to a single shot being fired, for the sole purpose of identifying Mr. Brown, and precluded testimony that the shot was fired at T.F.'s home, and cautioned counsel not to refer to a "drive-by shooting." *Id*.

5

The jury found Mr. Brown guilty and the court sentenced him to a 386-month sentence. *Id*. at *2.

On his second appeal to the Minnesota Court of Appeals, Mr. Brown argued that *Brown I* precluded the use of *Spreigl* evidence on retrial, therefore, the law-of-the-case doctrine barred the district court from admitting it. *Id*. at *2–3. In addition, he challenged the relevance of the *Spreigl* evidence and asserted that its probative value was outweighed by the danger of unfair prejudice. *Id*. Mr. Brown's counsel submitted the *Spreigl* argument on appeal, while Mr. Brown, in a pro se supplemental brief, challenged his conviction on the following additional grounds: (1) the sufficiency of the evidence; (2) the exclusion of alternative-perpetrator evidence; (3) the district court lacked jurisdiction because there was no indictment or grand jury proceeding; (4) the denial of his motion to dismiss the case for an allegedly illegal blood draw; (5) the admission of certain challenged evidence; and (6) the trial judge's failure to recuse on remand. (R&R at 4) (citing R.A. at 1–35).

The Minnesota Court of Appeals affirmed Mr. Brown's conviction in *Brown II*, finding the law-of-the-case doctrine did not preclude the admissibility of the *Spreigl* evidence and that the admission of such evidence was not an abuse of discretion. *Brown II*, 2023 WL 3806696, at *2–5. It also rejected all six of Mr. Brown's pro se claims. *Id*. at *5–8.

In Mr. Brown's petition for further review ("PFR") to the Minnesota Supreme Court, filed by counsel, he raised his *Spreigl* claim. (R.A. at 116, 124–29.) His counsel also summarily raised the question of whether "any of the arguments or issues Brown raised in his pro se supplemental brief to the Court of Appeals, including any and all federal constitutional

6

claims, entitle him to relief?" (*Id.* at 116.)  However, counsel did not elaborate on this issue

in Mr. Brown's PFR.  (*See id.* at 114–30.)

The Minnesota Supreme Court denied Mr. Brown's PFR on September 19, 2023.  (*Id.*

at 131.)

### C.  2254 Motion and R&R

In February 2024, Mr. Brown timely filed the instant Petition in this Court pursuant to

28 U.S.C. § 2254.  In the Petition, Mr. Brown challenges his state court conviction, asserting

seven grounds for relief:  (1) the *Spreigl* evidence should have been excluded under the law-

of-the-case doctrine; (2) the evidence was insufficient to support his second-degree murder

conviction; (3) his right to present a complete defense was violated by the exclusion of

alternative-perpetrator evidence; (4) the trial court lacked jurisdiction because he was not

properly charged by way of an indictment; (5) the blood draw violated his Fourth Amendment

rights; (6) several evidentiary rulings were in error and prejudiced his case; and (7) the trial

judge should have recused herself.  (Pet'r's Mem. [Doc. No. 2] at 1–9; *see also* R&R at 4–5.)

In addition, Mr. Brown requests an evidentiary hearing in support of his *Spreigl* claim.

(Pet'r's Mot. for Evid. Hr'g at 1–3.)

In the R&R, Magistrate Judge Elkins found that the sole federal claim Mr. Brown had

fairly presented to the state courts was his Fourth Amendment challenge to the blood draw.

(R&R at 10–12.)  She concluded that Mr. Brown failed to show that the Minnesota Court of

Appeals' ruling on this issue was contrary to or an unreasonable application of federal law

and recommended that this ground for relief be denied.  (*Id.* at 12.)  As to his other six grounds

for relief, Magistrate Judge Elkins found that Mr. Brown failed to present a federal basis for them in either his appeal to the Minnesota Court of Appeals or in his PFR to the Minnesota Supreme Court.  (*Id*. at 13.)  Accordingly, she found that Mr. Brown had procedurally defaulted all of his remaining grounds for relief.  (*Id*. at 13–17.)  The magistrate judge therefore recommended that relief be denied on these claims, that the habeas petition be dismissed with prejudice, and that a Certificate of Appealability be denied.  (*Id*. at 17.)

## II.    DISCUSSION

### A.  Standard of Review and Applicable Rules of Law

The district court reviews de novo those portions of the R&R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* D. Minn. L.R. 72.2(b).

Here, while Mr. Brown objects to all of the magistrate judge's findings and recommendations, (*see* Objs. at 3), he focuses on the admissibility of the *Spreigl* evidence, asserting that its admission at trial violated his right to due process.  (*Id*. at 3–4) (stating, "[O]ut of all of my claims, there is one th[at] stands out overall[:] the lower court was allowed to present evidence of a drive by shooting even after the higher court deemed that that evidence was inadmissible.").  In addition, he objects to the magistrate judge's finding that, with the exception of his Fourth Amendment challenge to the blood draw, he failed to fairly present his federal constitutional claims to the state courts.  (*Id*. at 2.)  In response to Mr. Brown's Objections, the Government requests that the Court adopt the magistrate judge's

findings and recommendations, based on the analysis set forth in the R&R. (Gov't Resp. [Doc. No. 19] at 1.)

A writ of habeas corpus under § 2254 "shall not be granted" with respect to any claim that has been adjudicated on the merits in state court unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). A state court adjudication is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves "an unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2), only if the "state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Because state court factual findings are presumed to be correct, they "can be rebutted only by clear and convincing evidence." *Lupien v. Clarke*, 403 F.3d 615, 618 (8th Cir. 2005).

Before seeking a writ of habeas corpus, a state prisoner must exhaust all available state court remedies. 28 U.S.C. § 2254(b)(1). In order to provide the state with the opportunity to adjudicate and correct any alleged violations of a prisoner's federal rights, a federal habeas petitioner must "provide the state courts with a 'fair opportunity' to apply controlling legal

9

principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).  Thus, a habeas petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam)).  In order to properly present such a claim, "the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state court." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citations and internal quotation marks omitted).

If a habeas claim has not been fairly presented to the highest available state court as a federal constitutional claim, it is an unexhausted claim, and cannot serve as a basis for federal habeas relief.  "When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in *Rhines v. Weber*, [544 U.S. 269] (2005)." *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005), *cert. denied*, 546 U.S. 1179 (2006).  However, if state procedural rules preclude further attempts to meet the exhaustion requirements for that claim, then the claim is procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Under Minnesota law, a longstanding procedural bar known as the "*Knaffla* rule" prevents state prisoners from seeking postconviction relief based on claims that could have been raised

on direct appeal, because the prisoner either knew or should have known of the claims at that time. *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976). Claims are considered "known" if they were available after trial and could have been raised on direct appeal. *See Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006). There are two exceptions to *Knaffla*'s procedural bar for claims that could have been raised on direct appeal—the procedural bar may not apply (1) to claims that were so novel their legal basis was not reasonably available at the time of direct appeal; or (2) because "the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal" and "fairness so requires" review. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007) (quotations omitted).

When claims are procedurally defaulted, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The exception for a fundamental miscarriage of justice requires a habeas petitioner to "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011).

### B. "Fairly Presented" Federal Claim: Fourth Amendment Challenge to Blood Draw

Following his murder conviction on remand, Mr. Brown appealed the constitutionality of his blood draw. *Brown II*, 2023 WL 3806696, at *7. The Minnesota Court of Appeals found no error in the trial court's denial of his motion to dismiss on this basis. *Id*. As the

magistrate judge correctly observed, Mr. Brown fairly presented this constitutional challenge to the state courts. (R&R at 10–11.)

Relying on *Winston v. Lee*, 470 U.S. 753 (1985), Mr. Brown again contends that the trial court should have dismissed his case because a blood draw, performed while he was in custody, constituted an unreasonable search in violation of the Fourth Amendment. (Pet. at 5.) However, as the magistrate judge explained, *Winston* does not warrant dismissal here. First, Mr. Brown was subject to a blood draw, not a compelled, involuntary surgery that required anesthesia as in *Winston*—a surgical procedure that posed a far greater intrusion, with far more potential risks, than a blood draw. (R&R at 11.) Second, the typical remedy for evidence obtained in violation of the Fourth Amendment is suppression, not dismissal. (*Id*. at 12) (citing *United States v. Barraza-Maldanado*, 732 F.3d 865, 867 (8th Cir. 2013)). In fact, the trial court suppressed the evidence obtained from Mr. Brown's blood draw from his second murder trial. *Brown II*, 2023 WL 3806696, at *7. Finally, *Winston* did not reach the question of whether dismissal of charges is the appropriate remedy for an unreasonable search of a defendant's body. Rather, *Winston* arose in the context of injunctive relief, with the defendant seeking an injunction prior to the proposed surgery to remove a bullet that could be used in evidence against him. 470 U.S. at 757–58.

In sum, Mr. Brown has not shown an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1) with respect to his Fourth Amendment claim. Furthermore, nothing about the blood draw evidence—which the trial court suppressed— implicates "an unreasonable determination of the facts in light of the evidence presented in

the state court proceeding" under § 2254(d)(2).    Accordingly, Mr. Brown's Fourth Amendment claim does not provide a basis for habeas relief.

### C. Remaining Claims

As to the magistrate judge's finding that Mr. Brown failed to fairly present the federal nature of his remaining claims to the state court in *Brown II*, Mr. Brown asserts two broadly applicable objections.  First, he argues that he was not required to seek state post-conviction relief, but rather, could petition for habeas relief in federal court after the conclusion of his direct appeal.  (Objs. at 2.)  Because the R&R contains no finding to the contrary, this objection is moot.

Second, Mr. Brown points to his PFR to the Minnesota Supreme Court, filed by his former counsel, which broadly raised as the second of two issues, whether "any of the arguments or issues Brown raised in his pro se supplemental brief to the Court of Appeals, including any and all federal constitutional claims, entitle[d] him to relief[.]"  (*Id*.; R.A. at 116.)  The PFR did not otherwise address any federal constitutional claims.  Accordingly, the Court will consider whether the arguments that Mr. Brown presented to the Minnesota Court of Appeals raised federal constitutional issues.

#### 1. *Spreigl* Evidence

In his § 2254 Motion, Mr. Brown asserts a violation of his Sixth and Fourteenth Amendment rights based on the admission of the limited *Spreigl* evidence at his second murder trial.  (Pet. at 3.)  Mr. Brown's PFR to the Minnesota Supreme Court did not advance any constitutional arguments concerning the *Spreigl* evidence,  (R.A. at 114–30), nor did the

appellate brief that Mr. Brown's counsel submitted to the Minnesota Court of Appeals.[3]   (*Id.* at 1–31.)   It is true that in his counsel's brief to the Minnesota Court of Appeals, Mr. Brown's counsel cited three federal cases involving Federal Rule of Evidence 404(b):   *Government of Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976); *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *United States v. Foskey*, 636 F.3d 517, 523 (D.C. Cir. 1980).  (R.A. at 3–4, 21, 26.)   However, counsel relied on these cases because the federal evidentiary rule corresponded with Minnesota Federal Rule of Evidence 404(b), not because the cases raised any constitutional issues.   Rather, Mr. Brown's *Spreigl* claim was based on state law. Although Mr. Brown now invokes the Sixth and Fourteenth Amendments in his habeas petition, (Pet. at 3), "asking for the same relief on different grounds does not retroactively convert the state law claim presented in the petitioner's brief to the [state appellate courts] into a federal claim."  *Turnage v. Fabian*, 606 F.3d 933, 940 (8th Cir. 2010).

The fact that Mr. Brown did not fairly present a constitutional claim on this basis to the Minnesota state courts "means that it is procedurally defaulted."  *Id*. at 940–41; *see also Coleman*, 501 U.S. at 750.  To the extent any constitutional aspect of Mr. Brown's *Spreigl* claim exists, it would have been "known" at the time of his direct appeal, *Townsend*, 723 N.W.2d at 18, would not have been novel, and fairness does not require review.  *Leake*, 737 N.W.2d at 535.  Mr. Brown has shown neither cause and prejudice for failing to raise such a claim, nor that the failure to consider such a claim would result in a fundamental miscarriage

---

[3]      In his pro se supplemental brief to the Minnesota Court of Appeals, Mr. Brown did not duplicate the *Spreigl* argument advanced by his counsel.  (*See* R.A. at 36–55.)

of justice.  *Coleman*, 501 U.S. at 750.  Accordingly, under § 2254(d)(1), this claim is procedurally defaulted.

Habeas relief under § 2254(d)(2), based on an unreasonable determination of the facts in light of the evidence presented in state court, is likewise denied.  At the second murder trial, the trial court admitted *Spreigl* evidence on a limited basis.[4]  On appeal in *Brown II*, the Minnesota Court of Appeals carefully considered Mr. Brown's *Spreigl* arguments concerning relevance and prejudice.  2023 WL 3806696, at *4–5.  It found that the district court did not abuse its discretion in admitting the limited *Spreigl* evidence to establish identity and opportunity, and that the probative value of the evidence was not outweighed by the potential for unfair prejudice.  *Id*.  Mr. Brown has not submitted clear and convincing evidence to rebut the presumption that the state courts' factual determinations were incorrect.  *Lupien*, 403 F.3d at 618.

For all of these reasons, Mr. Brown is not entitled to habeas relief based on his *Spreigl* claim.

---

[4]    As to Mr. Brown's law-of-the-case argument, the Minnesota Court of Appeals explained in *Brown II* that in *Brown I*, it considered the improper joinder of charges, and analyzed the prejudice of *hypothetical Spreigl* evidence of the drive-by shooting.  2023 WL 3806696, at *3 (emphasis added).  However, at that time, it was not reviewing the trial court's decision in the second murder trial to admit limited *Spreigl* evidence.  *Id*.  In fact, in *Brown I*, the Minnesota Court of Appeals contemplated the potential admission of *Spreigl* evidence on remand, as it advised the prosecution to "make clear what specific other acts it seeks to introduce and under what specific legal basis" and to meet the applicable standards of proof and *Spreigl* balancing tests on remand.  *Id*. (citing *Brown I*, 2020 WL 4932785, at *12, 15).

## 2. Sufficiency of the Evidence

Mr. Brown also contends that the evidence admitted at his retrial for second-degree murder was insufficient to support his conviction, in violation of the Sixth and Fourteenth Amendments, alleging that the state "failed to prove many elements of the crime nor presented any eyewitness to the crime or motive as to why the crime was committed." (Pet. at 3; Pet'r's Mem. at 2–3.) He asserts that the evidence against him was largely or entirely circumstantial. (Pet'r's Mem. at 3.)

To the extent there is a constitutional dimension to this claim, Mr. Brown did not fairly present it to the state courts. Mr. Brown only invokes constitutional violations regarding the sufficiency of the evidence in the instant habeas petition. (*See* R.A. at 4–42, 114–30. ) "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curium) (quotation omitted), and, as the magistrate judge observed, "mere similarity between state law claims and federal habeas claims is insufficient to satisfy the fair presentation requirement." (R&R at 13–14) (citing *Turnage*, 606 F.3d at 936).

Here, the Minnesota Court Appeals clearly examined Mr. Brown's sufficiency-of-the-evidence challenge under state law, *Brown II*, 2023 WL 3806696, at *7–8, which differs from the federal due process standard. Under Minnesota law, a heightened scrutiny standard applies to convictions based on circumstantial evidence, requiring that the circumstances proved be "consistent with a hypothesis that the defendant is guilty and must be inconsistent with any other rational hypothesis." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). The

federal due process standard simply requires that the evidence, whether direct or circumstantial, "reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). It need not "rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id*.

Mr. Brown could have also raised a constitutional challenge to the state appellate courts, but he failed to do so (*see* R.A. at 40–42), and neither exception to *Knaffla* applies. *Leake*, 737 N.W.2d at 535. Accordingly, the claim is procedurally defaulted. *Coleman*, 501 U.S. at 750. Mr. Brown has shown neither cause and prejudice for the default, nor that a failure to consider such a claim would result in a fundamental miscarriage of justice. *Id*. Therefore, he is not entitled to relief under § 2254(d)(1).

Nor is Mr. Brown entitled to relief under § 2254(d)(2) for an unreasonable determination of the facts in light of the evidence presented in state court. The Minnesota Court of Appeals found that the "circumstances proved" by the circumstantial evidence in Mr. Brown's retrial for second-degree murder were consistent with guilt and "d[id] not support a rational hypothesis inconsistent with Brown's guilt." *Brown II*, 2023 WL 3806696, at *5–6 (citing *State v. Silvernail*, 831 N.W.2d 594, 598–99 (Minn. 2013)). That finding, under a heightened scrutiny standard, is supported by the record, and Mr. Brown has submitted no clear and convincing evidence to rebut the presumption that the state courts' factual determinations were correct. *Lupien*, 403 F.3d at 618.

Accordingly, for all of these reasons, Mr. Brown is not entitled to habeas relief based on his sufficiency-of-the-evidence claim.

17

### 3.  Alternative-Perpetrator Evidence

Under the Sixth and Fourteenth Amendments, Mr. Brown contends that the trial court abused its discretion by excluding certain alternative-perpetrator evidence, thereby allegedly denying him the right to a complete defense.  (Pet. at 4; Pet'r's Mem. at 3–4.)  Specifically, he maintains that "there has been evidence in the record that proves that the victim D.H. pulled out a handgun and pointed it to the face of T.F.['s] brother before [D.H.] was killed."  (Pet'r's Mem. at 3.)

The R&R recommends that this claim be denied under § 2254(d)(1) because Mr. Brown "failed . . . to present any federal basis for this claim to the [state appellate courts]" and "did not raise any specific federal constitutional rights or case law for the state courts' consideration and therefore did not fairly present any federal issue to the Minnesota Court of Appeals or the Minnesota Supreme Court."  (R&R at 14.)  While the Court agrees with the magistrate judge's ultimate conclusion, the analysis requires more discussion.   In Mr. Brown's pro se supplemental brief to the Minnesota Court of Appeals, he *did* refer to a specific constitutional right, albeit broadly.  (R.A. at 42.)  He argued that by excluding his alternative-perpetrator evidence, the trial court denied him the "right to present a complete defense and because of this, defendant [B]rown was denied [his] due process and the right to a fair trial."  (*Id.*)

That said, merely invoking "a constitutional guarantee as broad as due process," is insufficient to submit the substance of a constitutional claim to the state courts.  *Gray v. Netherland*, 518 U.S. 152, 163 (1996).  Mr. Brown's appeal of this issue was based on the

18

trial court's evidentiary rulings. Typically, in the habeas context, "questions regarding the admissibility of evidence are matters of state law." *Garcia v. Mathes*, 474 F.3d 1014, 1017 (8th Cir. 2007). In order to raise a federal issue based on evidentiary errors, the petitioner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Rousan v. Roper*, 436 F.3d 951, 958–59 (8th Cir. 2006). Although Mr. Brown broadly referred to due process before the Minnesota Court of Appeals, the substance of his state-court argument was, as it is here, based on state-law evidentiary rulings, as he argued, "[T]here has been evidence in the record that proves that the victim D.H. pulled out a handgun and pointed it to the face of T.F.['s] brother before [D.H.] was killed." (*Compare* R.A. at 42, *with* Pet'r's Mem. at 3.)

Magistrate Judge Elkins acknowledged that in Mr. Brown's pro se alternative-perpetrator argument to the Minnesota Court of Appeals he cited *State v. Post*, 512 N.W.2d 99 (Minn. 1994)—a state court decision that noted the harmless error standard under U.S. Supreme Court case law. (R&R at 14 n.5) (citing R.A. at 43). In *Post*, the Minnesota Supreme Court addressed the exclusion of evidence regarding an initial aggressor under controlling Minnesota precedent and the Minnesota Rules of Evidence. 512 N.W.2d at 102 (citing *State v. Salazar*, 289 N.W.2d 753 (Minn. 1980)). Invoking the harmless error standard from U.S. Supreme Court authority, the Minnesota Supreme Court in *Post* stated that "the reviewing court must be satisfied beyond a reasonable doubt that if the evidence had been admitted and the damaging potential of the evidence fully realized, an average jury (i.e., a reasonable jury) would have reached the same verdict." *Id*. Mr. Brown quoted this same

passage from *Post* in his pro se supplemental brief to the Minnesota Court of Appeals.  (R.A. at 43.)  This language would not have alerted the state courts to any constitutional errors resulting from the exclusion of certain alternative-perpetrator evidence.  Indeed, the Minnesota Court of Appeals addressed his alternative-perpetrator challenge only under state law.  *Brown II*, 2023 WL 3806696, at *6.  Therefore, the Court agrees with the magistrate judge's ultimate finding that Mr. Brown did not fairly present the federal substance of his alternative-perpetrator claim to the Minnesota state courts and it is procedurally defaulted under state law, as he fails to meet any exceptions to *Knaffla*.  *Leake*, 737 N.W.2d at 535.  Federal habeas review is barred because Mr. Brown has shown neither cause and prejudice for the default, nor that a failure to consider such a claim would result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Accordingly, he is not entitled to relief under § 2254(d)(1).

However, even if Mr. Brown did fairly present the federal nature of this claim to the Court of Appeals by referring to "due process" (R.A. at 42–43), this claim still fails because the state courts' exclusion of alternative-perpetrator evidence was not an objectively unreasonable application of clearly established federal law.  28 U.S.C. § 2254(a).  Nor was Mr. Brown's conviction based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2).  The Minnesota Court of Appeals noted that at trial, Mr. Brown did not seek to actually offer evidence that the person who killed D.H. was the same person at whom D.H. had earlier pointed a gun.  *Brown II*, 2023 WL 3806696, at *6.  Denying Mr. Brown's motion for lack of foundation, the trial court found that Brown "was

not actually offering . . . alternative perpetrator evidence.  Instead, this is more consistent with a simple not guilty plea." *Id*.  Mr. Brown was still allowed to testify that the victim, D.H., "pointed a gun at someone else and that [Mr. Brown] fled after an unknown third party murdered D.H." *Id*.

On direct appeal, the Minnesota Court of Appeals found no error because the proffered evidence did not tie the alternative perpetrator to D.H.'s murder. *Id*.  Further, the court found that even if the exclusion of Mr. Brown's proffered evidence was in error, "any error was harmless beyond a reasonable doubt because Brown presented the proffered evidence through his own testimony." *Id*.  (citing *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) ("An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error.")).  The Court finds that these state court determinations did not involve an objectively unreasonable application of clearly established federal law, nor was there an unreasonable determination of the facts in light of the evidence presented.   Because the R&R did not contain this additional analysis, but ultimately reached the same conclusion, the Court adopts the portion of the R&R addressing Mr. Brown's alternative-perpetrator claim (R&R at 14), as modified herein.

For all of these reasons, this ground for habeas relief fails.

### 4.  Indictment

Mr. Brown also alleges that his Fifth and Fourteenth Amendment rights were violated "when the state tried and convicted me without an indictment being issued or a grand jury

being summoned." (Pet. at 4.) He contends that his conviction is invalid because the court lacked jurisdiction on this basis. (*Id*.; Pet'r's Mem. at 4–5.)

Mr. Brown is not entitled to habeas relief under § 2254(d)(1) because he failed to raise this in his state appeal as constitutional error. (*See* R.A. at 39, 43–44, 114–30.) Rather, in his pro se brief to the Minnesota Court of Appeals, he relied exclusively on Minnesota statutes and Minnesota Rule of Criminal Procedure 18.06. (*Id.* at 43–44.) He invoked no specific federal right, constitutional provision, or Minnesota case law discussing a federal basis for this claim. (*Id.*) Consistent with Mr. Brown's pro se arguments on appeal, the Minnesota Court of Appeals addressed his jurisdictional argument under state law. *Brown II*, 2023 WL 3806696, at *6.

Moreover, as the magistrate judge observed, there is no federal constitutional requirement that an indictment be issued in state criminal proceedings or that states must conduct grand jury proceedings. (R&R at 14–15 n.6) (citing *Alexander v. Louisiana*, 405 U.S. 625, 633 (1973); *Cooksey v. Delo*, 94 F.3d 1214, 1217 (8th Cir. 1996)). Even if there were, Mr. Brown could have raised the federal nature of this claim on direct appeal, but he failed to do so, and he fails to meet any exceptions to *Knaffla* under state law. *Leake*, 737 N.W.2d at 535. Accordingly, this claim is procedurally defaulted. *Coleman*, 501 U.S. at 750. Mr. Brown has shown neither cause and prejudice for the default, nor that a failure to consider such a claim would result in a fundamental miscarriage of justice. *Id.* Accordingly, he is not entitled to relief under § 2254(d)(1).

Nor is Mr. Brown entitled to relief under § 2254(d)(2) based on an unreasonable determination of the facts in light of the evidence presented in state court, as this issue is procedural and does not implicate a determination of the facts.

For all of these reasons, this ground for habeas relief fails.

### 5. Inadmissible Evidence

Mr. Brown also alleges a violation of his Eighth and Fourteenth Amendment rights based on the admission of evidence "that was irrelevant, confusing, a waste of time and caused unfair prejudice." (Pet. at 5.)  Specifically, the evidence he identifies includes a video from the car wash, a picture of a Glock handgun, a bloody shirt, 911 calls, a photograph of blood on the street, and D.H.'s watch.  (*Id.*)

Again, Mr. Brown is not entitled to habeas relief under § 2254(d)(1) because he fails to meet the fair presentation requirement for this claim.  (*See* R.A. at 39, 45–46, 114–30.)  He did not submit this claim to the Minnesota Supreme Court.  (*See id.* at 116.)  As for his inadmissible-evidence argument to the Minnesota Court of Appeals, in his pro se brief, he based his argument on Minnesota Rules of Evidence 401, 402, and 403.  (*Id.* at 45–46.)  As noted earlier, in the habeas context, questions concerning the admissibility of evidence are generally state law matters.  *Garcia*, 474 F.3d at 1017.  Mr. Brown does not meet the standard necessary for habeas relief on this issue because he has not shown that the alleged evidentiary improprieties "were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair."  *Rousan*, 436 F.3d at 958–59.

Because Mr. Brown failed to fairly present any constitutional aspects of this claim to the state courts, and he fails to meet any exceptions to *Knaffla* under state law, *Leake*, 737 N.W.2d at 535, this claim is procedurally defaulted. *Coleman*, 501 U.S. at 750. Mr. Brown has shown neither cause and prejudice for the default, nor that a failure to consider such a claim would result in a fundamental miscarriage of justice. *Id*. Accordingly, he is not entitled to relief under § 2254(d)(1).

Nor is Mr. Brown entitled to relief under § 2254(d)(2) based on an unreasonable determination of the facts in light of the evidence presented in state court. The Minnesota Court of Appeals thoroughly addressed Mr. Brown's evidentiary arguments, finding no error in the admission of the evidence. *Brown II*, 2023 WL 3806696, at *7–8. It noted that the handgun, bloody shirt, photographs, and D.H.'s watch tended to prove that Mr. Brown was connected to the murder. *Id.* at *7. Further, it found that the 911 calls tended to corroborate T.F.'s testimony about the events on the day of D.H.'s murder. *Id*. The appellate court also found that even if this evidence had been admitted in error, Mr. Brown failed to show a reasonable probability that any of the challenged evidence, which was cumulative, would have significantly affected the verdict. *Id*. Finally, as to the car wash evidence, the appellate court observed that Mr. Brown failed to object to its admission at trial, and failed to meet the plain error standard on appeal. *Id.* at *8. In sum, the state courts' determination of the facts was not unreasonable and does not permit habeas review under § 2254(d)(2).

For all of these reasons, this claim for habeas relief fails.

24

### 6. Recusal

In his final claim, Mr. Brown contends that the trial judge's refusal to recuse following remand violated his Sixth and Fourteenth Amendment rights. (Pet. at 5.)

Again, the magistrate judge correctly determined that Mr. Brown had procedurally defaulted his recusal claim under § 2254(d)(1) for failure to raise any constitutional aspects of this claim in his state court appeal. (*See* R.A. at 39, 47, 114–30.) Specifically, he failed to raise this claim with the Minnesota Supreme Court (*id.* at 116), and consistent with Mr. Brown's pro se appeal to the Minnesota Court of Appeals that relied only on state law, the Minnesota Court of Appeals applied only state law to his recusal claim. *Brown II*, 2023 WL 3806696, at *6.

Because Mr. Brown could have raised this claim on direct appeal and he fails to meet any exceptions to *Knaffla* under state law, *Leake*, 737 N.W.2d at 535, his recusal claim is procedurally defaulted. *Coleman*, 501 U.S. at 750. Mr. Brown has shown neither cause and prejudice for the default, nor that a failure to consider such a claim would result in a fundamental miscarriage of justice. *Id.* Accordingly, he is not entitled to relief under § 2254(d)(1). Nor is Mr. Brown entitled to relief under § 2254(d)(2) based on an unreasonable determination of the facts in light of the evidence presented in state court. As the Court of Appeals noted, Mr. Brown did not seek to remove the trial judge before his second trial for second-degree murder, nor did he provide any legal authority to support a claim of plain error. *Brown II*, 2023 WL 3806696, at *8.

For all of these reasons, this claim for habeas relief fails.

### D. Motion for an Evidentiary Hearing

Although Mr. Brown's Motion for an Evidentiary hearing appears to be limited to his *Spreigl* claim (Pet'r's Mot. for Evid. Hr'g at 1–5), the Court finds that all of the issues raised in his Petition can be resolved on the basis of the record and the parties' legal arguments such that no evidentiary hearing is necessary. *See Wallace v. Lockhart*, 701 F.2d 719, 729–30 (8th Cir. 1983). Accordingly, the Court denies Mr. Brown's Motion for an Evidentiary Hearing.

### E. Certificate of Appealability

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A Certificate of Appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a "showing" requires that he demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, Mr. Brown has not made such a showing, and thus is not entitled to a Certificate of Appealability.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.    Mr. Brown's Petition for a Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 [Doc. No. 1] is **DENIED**.

2.    Mr. Brown's Motion for an Evidentiary Hearing [Doc. No. 20] is **DENIED**.

3.     The Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. No. 17], as modified herein.

4.     A Certificate of Appealability is **NOT GRANTED**.

5.     This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March  5, 2025              s/Susan Richard Nelson
                                     SUSAN RICHARD NELSON
                                     United States District Judge